DUVAL RANCHING COMPANY; S & D Company; Kirk and Ramona Dahl; Sandra L. Sharp, individually; and Sandra L. Sharp and Randall Sharp as trustees of the Leslie B. Sharp Testamentary Trust, Plaintiffs,

v.

Daniel R. GLICKMAN, Secretary of Agriculture; Jack Ward Thomas, Chief, United States Forest Service; R.M. "Jim" Nelson, Acting Forest Supervisor, Humboldt National Forest; D. Waive Stager, Acting District Ranger, Ruby Mountains Ranger District, Humboldt National Forest; United States Forest Service; and United States, Defendants.

No. CV–N–95–38–ECR.

United States District Court,
D. Nevada.

March 14, 1997.

Gary D. Woodbury, Elko, for plaintiffs.

Shirley Smith, Asst. U.S. Atty., Reno, NV, Stephen G. Bartell, Claire E. Douthit, General Litigation Section, Environment & Natural Resources Div., U.S. Department of Justice, Washington, DC, for defendants.

EDWARD C. REED, Jr., District Judge.

Plaintiffs are ranchers. They have sued the United States, the United States Forest Service, and individual federal officers for a

variety of violations of state and federal law.[1] The dispute is essentially over property rights and land use in and around the Humboldt National Forest in Elko County, Nevada. Defendants have moved for summary judgment (# 76) as to all of Plaintiffs' claims, Plaintiffs have opposed (# 80), and Defendants have replied (# 83). For the reasons outlined below, we GRANT summary judgment to Defendants.

## BACKGROUND

The properties at issue sit in the northern part of what is known as the Ruby Valley, on the western slope of the Humboldt Mountains. Stipulation at 2(# 76). Four springs—Kelly, Woolverton, Ray, and House (which is actually two springs situated close together)—originate in the adjacent Humboldt National Forest, in what the ranchers term "close proximity" to their own land. Complaint at ¶ 24(# 1). The water flowing from these springs flows through natural watercourses and through ditches. The ranchers who live nearby are 1) Don, Grace, and Sim Duval, owners of Plaintiffs Duval Ranching Company and S & D Company, 2) Plaintiffs Sandra and Randall Sharp, mother and son, trustees of Plaintiff The Leslie B. Sharp Testamentary Trust, and owners of the Sharp Angus Ranch, and 3) Plaintiffs Kirk and Ramona Dahl. Complaint at 8–9(# 1).

### A. Kelly Spring

Both House Spring and Kelly Spring originate in the Rockslide drainage. Id. at ¶ 35. The upper portion of the Rockslide drainage is managed by the Forest Service, while the lower portion is owned by the Duvals. Id. at ¶ 36. About a half mile below Kelly Spring is an impoundment structure, and about 100 yards below that structure is an irrigation ditch which delivers water to the Duval Ranch. Id. The Duval Ranching Company claims ownership of the easement for this ditch. Stipulation at 5(# 76).

In the summer of 1992, Don Duval installed a collection box, pipeline, trough and overflow at Kelly Spring. Complaint at ¶ 39(# 1).

He had not at that time applied for a special use permit. Stipulation at 6(# 76). Duval was charged with two misdemeanors: damaging a natural feature of the United States, 36 C.F.R. § 261.9(a), and placing a structure on national forest land without approval from the Forest Service. 36 C.F.R. § 261.10(a). He pled guilty before a federal magistrate in January 1994, and was fined and ordered to restore the site to its original condition. Stipulation at 6(# 76). Duval began the restoration work, and applied unsuccessfully for a special use permit to replace the box. Id. In early October 1994, a group of unidentified citizens installed a new water collection box, which is currently in place, at Kelly Spring. Id.

### B. Woolverton Spring

The upper portion of the Woolverton drainage is public land, managed by the Forest Service; the lower portion is owned by Plaintiffs Kirk and Ramona Dahl. Stipulation at 3(# 76). Woolverton Spring originates in this drainage. Id. Its waters flow for about three-quarters of a mile in their original channel, and are then diverted across national forest land to the Dahls' ranch, by means of an irrigation ditch for which the Dahls claim an easement. Id.

Dahl and his wife have owned their ranch for over forty years and claim a water right dating back to 1875. Complaint at ¶¶ 2, 6(# 1). About six years ago, the Forest Service fenced off about 5.5 acres around Woolverton Spring in order to create or protect a riparian area. Complaint at ¶ 30(# 1). In addition, the spring has been covered, although the parties dispute how this came about. The ranchers allege that the Forest Service brought in heavy equipment and covered with fill material an area about 100 by 150 feet around the spring. Id. The Forest Service claims there was a natural landslide in the 1980's which disturbed the spring. Stipulation at 9(# 76). Finally, Dahl alleges that the ditch bank has been cut out allowing the water to flow back to the natural channel, and tree branches and other debris have

---

1. All the federal officers are sued in their official capacities. Complaint at ¶¶ 18–21(# 1). For simplicity we refer to all Defendants collectively as "the Forest Service."

been placed in the ditch, allegedly by Forest Service employees, causing the water in the ditch to flow over the bank. *Id.*

### C. Ray Spring

The bulk of the Ray drainage is public land; the lower quarter of the drainage is privately owned. Complaint at ¶ 41(# 1). Sandra Sharp claims that the Sharp Angus Ranch owns vested water rights to Ray Spring dating back to 1889. Opp'n, Ex. 10. A natural channel runs through the drainage, which was allegedly dug out in the past with a drag line or similar device, and then gets diverted to an irrigation ditch. *Id.* This irrigation ditch runs across the Duval's ranch and terminates at the Sharps' property. *Id.* Both the Duvals and the Sharps claim easements for this ditch. *Id.*, Exs. 9 and 10.

In 1990, the Forest Service planted Nebraska sedge in the Ray Spring channel. Opp'n, Ex. 2(# 80). Don Duval cleared the spring in May 1992, but was told by Forest Service personnel that the next time he did so he would face criminal charges. Stipulation at 4(# 76). In October 1992 Sandra Sharp orally proposed installation of a pipeline and trough which would have run across public land, but could not go forward with the project because the Forest Service refused to allow it. Opp'n, Ex. 10(# 80).

### D. House Spring

The Duvals claim an easement for a ditch running from House Springs (I and II) to their ranches. *Id.*, Ex. 9; Stipulation at 7(# 76). Other than allegedly challenging the Duvals' title to the easement, the Forest Service has done nothing to the Springs or the associated ditch. Opp'n, Ex. 9(# 80); Stipulation at 7(# 76).

### E. Mooney Ditch

The Dahls claim an easement across National Forest land for the Mooney Ditch. Stipulation at 7(# 76). The Forest Service has apparently done nothing to the Ditch. *Id.*

### F. Prior Proceedings

Plaintiffs (including, at the time, the Elko County Board of Supervisors) filed this action on January 20, 1995 for a variety of claims, which we outline below. On November 17, 1995 this Court denied (# 40) their motion for a preliminary injunction after oral argument. *Elko County Board of Supervisors v. Glickman,* 909 F.Supp. 759 (D.Nev. 1995). On April 19, 1996(# 44) we dismissed the Elko County Board of Supervisors for lack of standing. We then denied (# 50) Plaintiffs' motion to substitute as counsel the Elko County District Attorney in his official capacity, but on June 7, 1996 granted (# 61) their motion to substitute him in his individual capacity. *Duval Ranching Co. v. Glickman,* 930 F.Supp. 467 (D.Nev.1996); *Duval Ranching Co. v. Glickman,* 930 F.Supp. 469 (D.Nev.1996). On August 28, 1996 Defendants moved (# 76) for summary judgment. Plaintiffs have opposed (# 80), Defendants have replied (# 83), and this motion is now ripe.

### DISCUSSION

### I. Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture,* 18 F.3d 1468, 1471 (9th Cir.1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed. R. Civ. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial,

and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

## II. Summary of Claims

■ Although Plaintiffs' Claims all possess a common nucleus of law and fact, their Complaint (# 1) is lengthy, convoluted, and inartfully pled. For convenience, we elaborate on our prior (# 44) breakdown of it.[2]

1st. The Forest Service:

 A. imposed requirements on Plaintiffs' use and enjoyment of water rights in violation of Nevada and local law. Complaint at 20, First Claim for Relief (# 1).

 B. imposed requirements on Plaintiffs' use and enjoyment of rights of way in violation of Nevada and local law. *Id.* at 20.

2nd. The Forest Service:

 A. effected an uncompensated taking of private property for public use in violation of the Constitution by interfering with Plaintiffs' water rights. *Id.* at 21.

 B. likewise effected an uncompensated taking in violation of Nevada law. at 21.

 C. failed to perform a takings implication assessment as required by Executive Order 12630. *Id.* at 21–22.

3rd. The Forest Service used or willfully wasted water belonging to others, in violation of Nevada civil and criminal law. *Id.* at 22.

---

**2.** Under the "law of the case" doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case. *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir.1997) (citing *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993)). The doctrine is a guide to discretion, and not a limitation on a court's power. *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). A court has discretion to depart from the law of the case where, among other things, a manifest injustice would otherwise result. *Alexander*, at

876. In our Minute Order dismissing Elko County from this action (# 44), we interpreted each of Plaintiffs' claims; arguably, therefore, our prior breakdown of those claims is the law of the case. However, the purpose of our prior interpretation was to identify any interest Elko County may have had in the action, not to spell out the individual claims for summary judgment analysis. If we glossed over, or missed outright, one of Plaintiffs' claims in our Minute Order, it would surely cause a "manifest injustice" to adhere to that analysis. Accordingly, we adopt the instant breakdown of Plaintiffs' Complaint.

4th. The Forest Service:

 A. violated 43 U.S.C. § 661 and regulations issued thereunder by interfering with Plaintiffs' rights of way. *Id.* at 23–24.

 B. violated 43 U.S.C. § 661 and regulations issued thereunder by interfering with Plaintiffs' water rights. *Id.* at 23–24.

5th. The Forest Service violated the APA by promulgating regulations governing rights of way through the Humboldt National Forest without legal authority to do so. *Id.* at 24–25.

6th. The Forest Service:

 A. does not own the land on which Plaintiffs' asserted rights of way sit. *Id.* at 26.

 B. cannot regulate Plaintiffs' asserted rights of way. *Id.* at 26.

 C. cannot pursue civil or criminal penalties for violation of its regulations. *Id.* at 26.

7th. The Forest Service:

 A. infringed on Plaintiffs' inherent rights associated with their rights of way, by damaging or interfering with their water rights, rights of way, and water sources. *Id.* at 27.

 B. infringed on Plaintiffs' inherent rights associated with their rights of way, by pursuing criminal sanctions without first establishing ownership of the rights of way. *Id.* at 26–27.

8th. The Forest Service:

 A. violated the provisions of the Forest Service manual by prosecuting Plaintiffs instead of treating Plaintiffs' actions as relating to a title dispute. *Id.* at 27.

 B. damaged water sources with reckless disregard for the facts of ownership, in violation of the Forest Service manual. *Id.* at 27.

9th. The Forest Service took Plaintiffs' water rights without just compensation by physically damaging the springs at issue. *Id.* at 28.

10th. The Forest Service has violated Plaintiffs' civil rights by dredging, filling, damaging, or causing to be damaged the water sources at issue here, thus making Defendants liable under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Id.* at 29–30.

11th. The Forest Service:

 A. violated the National Environmental Policy Act, 42 U.S.C. § 9 4321–4370d ("NEPA"), by failing to solicit Plaintiffs' input prior to interfering with their property rights. *Id.* at 30.

 B. violated Plaintiffs' due process rights by failing to solicit Plaintiffs' input prior to interfering with their property rights. *Id.* at 30.

12th. The Forest Service failed to comply with NEPA prior to interfering with Plaintiffs' water rights. *Id.* at 30.

13th. The Forest Service:

 A. failed to obtain a Clean Water Act permit prior to dredging or placing fill material in U.S. waters. *Id.* at 31.

 B. failed to comply with NEPA prior to filling, or ordering the filling of, Woolverton Spring and Kelly Spring. *Id.* at 31.

In addition, all except Claims 1st A, 1st B, and 3rd evidently allege violations of the APA, since Plaintiffs cite to that statute in each of those Claims. We also assume that where Plaintiffs allege "damage" to property rights, they mean interference (with rights of way and water rights) or physical damage (to the springs themselves or to the ditches). Finally, Plaintiffs evidently claim interests in three different types of property, although it is not always clear which type they mean in any particular Claim for Relief: water rights (*e.g.,* 1st A, ¶ 54); rights of way, also known as easements, on which Plaintiffs have allegedly built or maintained ditches for transport

of water[3] (*e.g.,* 5th, ¶ 68); and "water sources," which we take to mean the physical springs themselves, including the real property on which they sit (*e.g.,* 7th A, ¶ 74).

### III. Subject Matter Jurisdiction

■ This action is riddled with jurisdictional defects. Plaintiffs' claims are so flawed that we are obliged to consider a veritable rainbow of federal justiciability issues: exhaustion of remedies, finality, standing, abstention, ripeness, statutory jurisdiction, and supplemental jurisdiction. We must examine these issues even if not raised by the parties. *Hoeck v. City of Portland,* 57 F.3d 781, 784 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 910, 133 L.Ed.2d 842 (1996); Fed.R.Civ.P. 12(h)(3).

### A. Exhaustion

■ The Administrative Procedure Act, 5 U.S.C. §§ 701–706 ("APA"), permits judicial review of final administrative agency action. *Clouser v. Espy,* 42 F.3d 1522, 1531–32 & n. 11 (9th Cir.1994) *cert. denied,* —— U.S. ——, 115 S.Ct. 2577, 132 L.Ed.2d 827 (1995). However, "appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Id.* at 1532 (quoting *Darby v. Cisneros,* 509 U.S. 137, 154, 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993) (emphasis omitted)). In cases not governed by the APA, appeal to superior agency authority may be required if the trial court so requires in its sound discretion. *Darby,* 509 U.S. at 153–54, 113 S.Ct. at 2548; *Western Radio Servs. Co. v. Espy,* 79 F.3d 896, 899 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 80, 136 L.Ed.2d 38 (1996). Such appeal to superior agency authority is unnecessary, however, where the agency's position on the issue "appears already set" and it is "very likely" what the result of recourse to administrative remedies would be—that is, where exhaustion would be "futile." *Clouser,* 42 F.3d at 1532–33 (citing *El*

*Rescate Legal Serv. v. EOIR,* 959 F.2d 742, 747 (9th Cir.1992)). Failure to meet exhaustion requirements destroys subject matter jurisdiction. *See Clouser,* 42 F.3d at 1531.

Defendants argue that the exhaustion doctrine bars Plaintiffs' First through Ninth Claims for Relief. Defs.' Summ. J. Mot. at 2 n. 3(# 76). Defendants contend that all nine claims necessarily depend on the existence of valid property rights, rights which have not been verified in accordance with Forest Service administrative procedures. *Id.* at 56. In their Reply, Defendants also contend that Plaintiffs have not exhausted their administrative efforts to acquire special use permits, permits which would permit them to legally enter on Forest Service land. Reply at 18–19(# 83).

Most of Plaintiffs' Claims for Relief apparently arise under the Administrative Procedure Act ("APA"). Complaint at ¶¶ 58, 66, 69, 72, 75, 78, 80(# 1). Those Claims for Relief which arise under other laws arise under state law (1st A, 1st B, 2nd B, 3rd), *Bivens* (10th), NEPA (11th A, 12th, 13th B), or the Clean Water Act (13th A). Where the APA applies, exhaustion is required only "when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby,* 509 U.S. at 154, 113 S.Ct. at 2548. As to the first circumstance (i.e., "required by statute"), Defendants point to no statute requiring exhaustion, and we have searched in vain for any such law.

■ As to the second circumstance, by a lucky coincidence one of the two Ninth Circuit cases construing *Darby* is directly on point. As we noted in our Order denying Plaintiffs' motion for preliminary injunction (# 40), *Clouser v. Espy* holds that there is an exhaustion requirement for Forest Service final agency action which is appealable under the regulations. *Elko County Board of Supervisors v. Glickman,* 909 F.Supp. 759, 765 (D.Nev.1995) (citing 36 C.F.R. § 251.101 (1996) and *Clouser,* 42 F.3d at 1532). The problem, though, is that there exists a genu-

---

**3.** These are not necessarily the same as "easements" and "rights-of-way" as defined in 36

C.F.R. § 251.51. *See infra* note 4.

ine issue of material fact as to whether exhaustion has occurred.

██ Although a court may resolve disputed factual issues in determining its own subject matter jurisdiction, where jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, the court should not dismiss for lack of subject matter jurisdiction unless there are no genuinely disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Wilson v. A.H. Belo Corp.* 87 F.3d 393, 396 (9th Cir.1996); *Steen v. John Hancock Mutual Life Insurance Co.*, 106 F.3d 904, 909–10 (9th Cir.1997). As discussed above, Plaintiffs' Complaint and moving papers assert ownership in three kinds of property: 1) "water sources," which we take to mean the springs as physical objects, 2) water rights, and 3) easements. *E.g.*, Complaint at ¶¶ 71, 74(# 1). A claim of ownership of water sources is tantamount to a claim of ownership of land; Defendants do not assert that Plaintiffs have failed to exhaust administrative remedies as to this claim of ownership, and we have in any event found no administrative appeal process in the regulations for refusal to convey title to a "water source." Water rights and easements, to the extent that claims of their ownership arise under federal law, are "special uses" within the meaning of 36 C.F.R. § 251.50.[4] Consequently, Plaintiffs may apply to the Forest Service for permission to use the water in the springs, to maintain the springs themselves, to maintain the ditches, and to enter on National Forest land in connection with these activities.[5] 36 C.F.R. § 251.54. In general, if the Forest Service denies a special use permit or an easement,

Plaintiffs may appeal. 36 C.F.R. § 251.82(a)(8).

In short, Plaintiffs' failure to seek (or appeal the denial of) a special use permit in accordance with the regulations would, if the evidence so proves, constitute a failure to exhaust administrative remedies which would render much of this action premature and negate our subject matter jurisdiction. It is undisputed that Plaintiff Duval Ranching Company filed a special use application with respect to a water collection apparatus and pipeline, and a right of way, at Kelly Spring. Defs.' Summ. J. Mot., Exs. 19(# 76). It is also undisputed·that this special use application was denied by Defendant Stager. *Id.* Ex. 20; Opp'n, Ex. 5. There is no evidence bearing on whether Plaintiffs have appealed this decision.

As to the other springs, it is less clear what administrative remedies Plaintiffs have or have not sought. Forest Service regulations, as discussed above, plainly require special use permits and have so required them since at least 1955, but as to Ray Spring, at least, it is undisputed that no permits have been approved. *E.g., City and County of Denver v. Bergland*, 695 F.2d 465, 469 (10th Cir.1982); Opp'n, Exs. 3, 4, 9(# 80). The only attempt to gain permission from the Forest Service for a pipeline from Ray Spring and its ditch was entirely oral; although the regulations only permit appeal of a written decision, neither side offers evidence as to whether Plaintiff Sharp filed a formal application. 36 C.F.R. § 251.82(a); Opp'n, Ex. 10(# 80). There is evidence that prior owners of Ms. Sharp's ranch maintained the ditch associated with Ray Spring; if they had a special use permit it has since

---

4. Under 36 C.F.R. § 251.53(1)(1) the Forest Service may grant a "permit" or "easement" for a "right-of-way." It is not clear whether a water right falls within the definition of a "right-of-way," since a water right may not be "land authorized to be used or occupied for the ... operation ... of a project or facility." 36 C.F.R. § 251.51. It does seem clear that the land supporting a ditch or canal constitutes a right-of-way within the meaning of § 251.51. Plaintiffs' claim for an "easement," either as an "easement" or simply as a "permit" within the meaning of § 251.51, may thus be granted by the Forest Service pursuant to 36 C.F.R. § 251.53(1)(1), but Plaintiffs' claim for a water

right may not be. If a water right can be granted, it should be treated administratively the same as an application for an easement; if not, there are no administrative remedies to exhaust.

5. We can find no mention of "administrative verification" in the applicable regulations; it appears to be simply a guideline in the Forest Service manual. Reply at 17 n. 13 (# 83). The Forest Service manual is not legally binding, however, so exhaustion of Forest Service manual remedies is not required. *Western Radio Services Co. v. Espy*, 79 F.3d 896, 901 (9th Cir.1996).

expired or been revoked. Opp'n, Ex. 10(# 86). As to Woolverton Spring, Plaintiff Kirk Dahl states that he has maintained it and its ditch for many years, but it is likewise unknown whether he possessed a special use permit, or applied for one. *Id.*, Exs. 11, 13. It seems that Defendants, if they knew of Plaintiffs' activities related to the ditches and springs at issue, never enforced the permit requirement (at least until 1992). *Id.*, Exs. 3, 9, 10, 11, 13.

All in all, Defendants' evidence is insufficient to prove exhaustion. There is therefore a genuine issue of material fact as to exhaustion under the APA. This is somewhat surprising considering Defendants' otherwise voluminous and comprehensive filings, and inasmuch as Plaintiffs vigorously challenge the validity of Defendants' regulatory scheme. Nonetheless, it is the case. As for the remaining Claims for Relief, there appear to be no administrative remedies to exhaust before suing under NEPA, the Clean Water Act, or *Bivens,* and Defendants have not pointed any out. *See Friends of the Wild Swan v. U.S. Forest Service,* 910 F.Supp. 1500, 1507 (D.Or.1995) (where there is no "administrative procedure for this type of challenge," exhaustion is not required). Accordingly, we do not lack subject matter jurisdiction for failure to exhaust administrative remedies.

## B. Finality

■ Defendants argue that Plaintiffs' claims are not justiciable because they seek review of agency action which is not final. Defs.' Summ. J. Mot. at 57(# 76). Agency action challenged under the APA must be "final agency action," a requirement with some flexibility. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 882, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990); *Abbott Lab. v. Gardner,* 387 U.S. 136, 149–50, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967). To be final, agency action must be "definitive," affect a plaintiff's day-to-day activities, inflict an ac-

tual, concrete injury, or have the status of law or comparable legal force. *General Atomics v. U.S. Nuclear Regulatory Comm'n,* 75 F.3d 536, 540 (9th Cir.1996) (citations omitted); *Ukiah Valley Medical Center v. FTC,* 911 F.2d 261, 264 (9th Cir. 1990) (citations omitted). A refusal to act may also be final. *Friends of the Wild Swan,* 910 F.Supp. at 1507.

In this case, Plaintiffs cite the APA as the basis of our jurisdiction in challenging several agency actions: interfering with water rights, apparently by diverting water or otherwise acting to prevent water from flowing through the ditches at issue, and without input from Plaintiffs (4th B, 11th B); interfering with rights of way in a similar manner (4th A, 7th A, 8th B, 11th B); damaging water sources with reckless disregard for ownership and without input from Plaintiffs (8th B, 11th B); promulgating unlawful regulations (5th, 6th B); and enforcing unlawful regulations through civil or criminal action (6th C, 7th B, 8th A).[6] We consider these agency actions in turn.

■ As for allegations that the Forest Service interfered with Plaintiffs' water rights, if the Forest Service actually did bulldoze over Woolverton Spring, or otherwise cause Plaintiffs to receive less water than they would have otherwise through physical activity, then there is final agency action. Interference with water rights in the manner alleged is not "definitive," nor does it have the "status of law," but that is only because such interference is a physical action rather than a policy position. The alleged interference certainly does inflict concrete injury and affect Plaintiffs' day-to-day activities. Moreover, the alleged agency action is final in the sense that we have no reason to think that the Forest Service will "un-bulldoze" Woolverton Spring any time in the future. Defendants have threatened Plaintiffs with penalties if Plaintiffs make improvements to the springs; we think these threats are best

---

6. For clarity, we note that the other Claims arise under different laws: NEPA (11th A, 12th, 13th B), Clean Water Act (13th A), state law (1st A, 1st B, 2nd B, 3rd), *Bivens* (10th), 28 U.S.C. § 2409a (6th A) (*but see infra*), and, to the extent they allege takings, 28 U.S.C. § 1346 (2nd A, 9th).

In other words, although Plaintiffs cite the APA in all their Claims for Relief except 1st A, 1st B, and 3rd, the substance of their Claims does not always support the APA as the "arising under" statute.

**1440**

considered as enforcement of regulations, which we consider below. Claims 4th B and 11th B are final for jurisdictional purposes.

 The same is true of Plaintiffs' claims that the Forest Service interfered with their rights of way, and for the same reasons. The Forest Service planted Nebraska sedge in the Ray Spring channel; this could fairly be considered interference with Plaintiffs' right of way. Opp'n, Ex. 2(# 80). The Forest Service allegedly "cut" the bank of the Woolverton Spring ditch and placed debris in its channel; this is disputed but there is nonetheless enough evidence to raise a genuine issue of material fact. *Id.* at Ex. 11. Defendants have threatened Plaintiffs with penalties if Plaintiffs make improvements to the ditches; we think these threats are best considered as enforcement of regulations, which we consider below. There is no other evidence of physical or legal interference with rights of way. In the absence of any restoration these alleged actions are surely final. Consequently, Claims 4th A, 7th A, 8th B, and 11th B are challenges to final agency action and we possess jurisdiction to hear them.

 Plaintiffs' claims that Defendants damaged water sources with reckless disregard for ownership of those water sources (8th B, 11th B) and without Plaintiffs' input are likewise final. The injury alleged is physical and therefore inflicts a concrete injury affecting Plaintiffs' day-to-day activities.

 Clearly, the promulgation of regulations is "final," since regulations have the status of law. *FTC v. Standard Oil Co.,* 449 U.S. 232, 239–40, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980). Claims 5th and 6th B therefore meet the finality requirement.

 Finally, there is no evidence that Defendants have ever attempted to enforce any regulations against any of the named Plaintiffs. Opp'n, Ex. 14(# 80). Mere threats are not final action. In *Ukiah Valley Medical Center* the Ninth Circuit held that the filing of a complaint by an administrative agency is not "final" for purposes of judicial review. 911 F.2d at 264. A fortiori, threatening to file a complaint, threatening to initiate criminal proceedings, or threatening to

sue, are also not final. Claims 6th C, 7th B, and 8th A fail the finality requirement.

**C. Standing**

 The standing doctrine addresses the question whether *these* Plaintiffs are entitled to have the court decide the merits of the dispute. *Lee v. State of Oregon,* 107 F.3d 1382, 1387 (9th Cir.1997) (citing *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). Constitutional standing has three elements: 1) the plaintiff must have suffered an invasion of a legally protected interest which is both concrete and particularized, and actual or imminent; 2) there must be a causal connection between the injury and the conduct complained of; and 3) it must be likely that the injury will be redressed by a favorable decision. *Lee,* at 1387 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). In addition, a plaintiff's asserted injury must fall within the "zone of interests" protected by the law sued under. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Lake Mohave Boat Owners Ass'n v. National Park Service,* 78 F.3d 1360, 1366 (9th Cir.1996). Like exhaustion and finality, standing is jurisdictional. *Lee,* at 1388.

 Interference with water rights and rights of way, the gravamen of most of Plaintiffs' first ten Claims for Relief, is plainly an invasion of a legally protected interest, fairly traceable to Defendants' actions, that is redressable by a favorable decision in this case. That Defendants may not have actually so interfered is a factual dispute, but it does not negate Plaintiffs' standing. We think the same may be said for Plaintiffs' Clean Water Act claim (13th A), since the alleged unlawful actions reduced the flow of pure water to Plaintiffs' ranches. Somewhat less clear is Plaintiffs' standing to bring a due process challenge (11th B). We assume, as we must for standing purposes, that Plaintiffs have a due process right to give "input" to Defendants regarding the springs and easements at issue, and that Plaintiffs were prevented (by Defendants) from giving such

input. Complaint at 30(# 1). This constitutes an invasion of a legally protected interest (i.e., the right to be heard), fairly traceable to the Defendants' actions; were we to issue an injunction to prevent such a violation in the future, it would redress Plaintiffs' injury.

 Plaintiffs' NEPA claims are a different story—tellingly, these are the only claims Defendants challenge on standing grounds. Defs.' Summ. J. Mot. at 86(# 76). The basic problem Plaintiffs face is that their injury does not fall within the "environmental" zone of interests protected by NEPA. *Nevada Land Action Ass'n v. U.S. Forest Service*, 8 F.3d 713, 716 (9th Cir.1993). Duval Ranching Company and S & D Company are just what their names imply—companies. They may have an "economic" interest in the springs at issue, but they cannot have an "environmental" interest in them. Plaintiff Sandra Sharp's affidavit contains no indication that she is interested in the springs except as a water supply for her ranch; Plaintiff Kirk Dahl's affidavit is to the same effect.[7] Opp'n, Exs. 10, 11(# 80). *Nevada Land Action Ass'n* holds that such "economic" interests are not within the zone protected by NEPA, and Plaintiffs therefore lack standing. 8 F.3d at 716. As a result, we must dismiss Claims 11th A, 12th, and 13th B.[8]

## D. Abstention

 Because federal courts must exercise the jurisdiction given them, as between federal and state courts "the pendency of an action in the state court is [generally] no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1367 (9th Cir.1990) (citations omitted). "Exceptional circumstances" permitting deference to such state court proceedings nonetheless exist. *Fireman's Fund Insurance Co. v. Quackenbush*, 87 F.3d 290, 297 (9th Cir.1996). In these circumstances, federal courts possess the discretion to abstain from exercising jurisdiction by dismissing or remanding cases, if the relief being sought is equitable or otherwise discretionary;[9] such abstention is S & D Company are

7. The only evidence in the record showing that Plaintiffs' injuries fall within NEPA's zone of interests is Don Duval's affidavit, in which he rhapsodizes over the natural beauty of the North Ruby Valley, "an oasis in the Nevada desert." Opp'n, Ex. 4(# 80). This is a nice try, but it is insufficient. Don Duval himself is not a party to this action, only his ranches are, and we think it physically impossible for commercial ranches to enjoy the beauty of their natural surroundings. Dude ranches might possibly have an interest in promoting environmental aesthetics, albeit for economic reasons, but there is no evidence that Duval Ranching Company or S & D Company are dude ranches.

8. In addition, we question Plaintiffs' standing to bring Claims 6th C, 7th B, and 8th A. Having dismissed those claims for lack of finality, however, we need not reach the question of standing.

9. Although we possess such discretion, how we exercise it is not entirely clear. Whether *Colorado River* abstention is appropriate normally depends on "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983). In the ninth Circuit, eight factors are considered: 1) which court has jurisdiction over the property in dispute, 2) inconvenience of the federal forum, 3) the desirability of avoiding piecemeal litigation, 4) the chronological order in which jurisdiction was obtained, 5) whether federal or state law provides the rule of decision, 6) whether the state proceeding is adequate to protect federal rights, 7) the presence or absence of forum shopping, and 8) the similarity of the federal and state proceedings. *Madonna*, 914 F.2d at 1368–72. No one factor is decisive; indeed, the test is flexible enough to incorporate other pertinent factors. *Id.* at 1367–68; *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246–47; see *Fireman's Fund*, 87 F.3d at 297–98.

The mere fact that a dispute is over water rights, though, evidently creates an exception to this principle: "when there is a comprehensive litigation of the water rights of the users of a particular water system ongoing in a state tribunal, the federal court may dismiss a water rights suit brought by a private party." *Gardner v. Stager*, 103 F.3d 886, 888 (9th Cir.1996) (citing *Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 569–70, 103 S.Ct. 3201, 3214–15, 77 L.Ed.2d 837 (1983)). This exception is based on "the most important consideration in any federal water suit concurrent to a comprehensive state proceeding"—the policy underlying the McCarran Amendment. *San Carlos Apache*, 463 U.S. at 570, 103 S.Ct. at 3215. Specifically, the federal government expressly waived sovereign immunity *only* with respect to comprehensive state water rights adjudications to avoid "piecemeal adjudi-

dude ranches, now known as *"Colorado River* abstention." *Quackenbush v. Allstate Insurance Co.,* —— U.S. ——, ——, ——, 116 *S. Ct.* 1712, 1721, 1728, 135 L.Ed.2d 1 (1996) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (citation omitted)). Abstention is appropriate even if the state adjudication occurs in an administrative (rather than a judicial) tribunal, whose decision is not *res judicata* in federal court. *Gardner v. Stager,* 103 F.3d 886, 888 (9th Cir.1996).

■ Defendants in this case argue that we should abstain from determining Plaintiffs' water rights, because of the ongoing Ruby Valley water rights adjudication before the Nevada State Engineer. Defs.' Summ. J. Mot. at 48(# 76). Defendants note, correctly, that the question of the validity of Plaintiffs' water rights so permeates the present case that abstention as to this issue would necessarily entail abstention as to most of Plaintiffs' Claims for Relief. *Id.* at 2 n. 3. Plaintiffs do not dispute that all the parties in the instant case, including the United States, are also parties to the state adjudication. Opp'n at 25(# 80). Indeed, Plaintiffs' only real opposition to Defendants' argument is an assertion that an issue of material fact exists as to the validity of Plaintiffs' water rights. *Id.* at 26.

■ This is true; it is also irrelevant. "[T]here is a comprehensive litigation of the water rights of the users of a particular water system ongoing in a state tribunal," a circumstance exceptional enough to warrant abstention. *Gardner,* 103 F.3d at 888; *Ari-*

*zona v. San Carlos Apache Tribe,* 463 U.S. 545, 569–70, 103 S.Ct. 3201, 3214–15, 77 L.Ed.2d 837 (1983). In fact, the present state adjudication is the very one recently cited by the Ninth Circuit as justifying abstention in *Gardner v. Stager. Gardner,* 103 F.3d at 888 & n. 3. Nonetheless, abstention is always discretionary. *Quackenbush,* —— U.S. at ——, 116 S.Ct. at 1728. Water rights is an issue considerably more in the background here than it was in *Gardner:* the *Gardner* plaintiffs sued to quiet title to water rights, but the instant Plaintiffs have sued for compensation arising from injury to water rights which they assume exist. *Gardner,* 103 F.3d at 888; Opp'n at 24(# 80). As a result, the *Madonna* factors do not militate strongly for abstention [10] and the holding in *Gardner* is distinguishable, in that substantial similarity between the actions was present in *Gardner* but is absent here. Accordingly, we exercise our discretion and do not abstain from adjudicating Plaintiffs' water rights.

### E. Ripeness

■ The ripeness doctrine serves to prevent the courts, through avoidance of premature adjudication, from suffering entanglement in abstract disagreements over administrative policies, and to protect agencies from judicial interference until administrative decisions have been formalized and their effects concretely felt by challenging parties. *Winter v. California Medical Review Board, Inc.,* 900 F.2d 1322, 1325 (9th Cir.1990). A court determines ripeness by examining the

---

cation of water rights in a river system." *Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247. This policy is apparently so compelling that a question of title to water rights alone constitutes the "exceptional circumstances" necessary to justify abstention, and no balancing of factors need be performed. *Fireman's Fund,* 87 F.3d at 297.

10. Of the eight factors, jurisdiction over the property is inapplicable, and there is no evidence bearing on forum shopping or on the ability of the state proceedings to protect federal rights. Those factors weighing against abstention are a) the federal forum is no more or less inconvenient than the state forum, b) the substantive law to be applied is state law, which, though easily applied by federal courts, is perhaps best applied by state courts, and c) the state proceeding is not sub-

stantially similar to the instant action, since it involves only an adjudication of water rights. Those factors weighing in favor of abstention are a) the state action has been proceeding for over ten years, and b) failure to abstain would result in piecemeal litigation. Although the interest in avoiding piecemeal water rights litigation articulated in the McCarran Amendment, *Colorado River, San Carlos Apache,* and *Gardner* is quite strong, we think that it, plus the lengthiness of the state proceeding, are insufficient to render this case an "exceptional circumstance" justifying abstention. Consequently, even if we were required to apply the *Madonna* factors in a water rights case such as this, abstention would not be a sound disposition.

fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. *Id.* A claim is ripe if, among other things, the challenged agency action is final. *Id.* A litigant suffers hardship if withholding review would result in direct and immediate injury. *Id.*

■ Defendants argue that Plaintiffs' NEPA claims are not ripe for review. Having found that Plaintiffs lack standing to sue under NEPA, we need not address this argument. Moreover, the other Claims of questionable ripeness we have already found dismissable for lack of finality. Accordingly, we dismiss no Claims for lack of ripeness.[11]

### F. Statutory Jurisdictional Requirements

#### 1. Clean Water Act Notice Provision

■ Plaintiffs allege that Defendants, in filling or causing to be filled Woolverton and Kelly Springs, violated the Clean Water Act by not obtaining a permit to do so. Complaint at 31(# 1). It is true that 33 U.S.C. § 1311 prohibits discharge of dredged or fill material into navigable waters without an Army Corps of Engineers permit issued pursuant to 33 U.S.C. § 1344. It is also true that citizens (such as Plaintiffs) may sue the United States for violation of this law. 33 U.S.C. § 1365(a).

However, the citizen-plaintiff must give sixty days' notice, to the suspected polluter, to the state where the violation occurred, and to the Administrator of the Environmental Protection Agency, before commencing suit. 33 U.S.C. § 1365(b). This requirement is jurisdictional: failure to so notify is not simply a failure to state a claim, it is a failure of subject matter jurisdiction. *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1355 (9th Cir.1995). It is undisputed that Plaintiffs have not complied with 33 U.S.C.

§ 1365(b). Opp'n at 44–46(# 80). Consequently, we lack subject matter jurisdiction over Claim 13th A.[12]

### 2. Takings

■ Defendants correctly note that the Little Tucker Act, 28 U.S.C. § 1362, grants district courts jurisdiction over claims against the United States only up to $10,000 in amount, and claims larger than that must be brought in the Court of Federal Claims. 28 U.S.C. § 1491(a)(2). Defendants also correctly note that the evidence is unclear on whether Plaintiffs' takings claims meet this jurisdictional requirement.

■ Plaintiffs' takings claims suffer from a different defect as well: they seek no compensation at all. Claims 2nd A and 9th request only an injunction (and, arguably, declaratory relief). Complaint at 22, 29(# 1). Their Opposition reiterates this form of relief: Plaintiffs seek "a declaration by this Court that a taking has occurred" and "declaratory and injunctive relief." Opp'n at 26, 37(# 80). Only in their Opposition do they purport to claim damages: "[i]f damages are required to be assessed, Plaintiff does not seek an amount greater than $10,000.00." *Id.* at 26–27.

We think Plaintiffs must stand on the contents of their Complaint; their Opposition, to the extent it is a claim for damages, is therefore ineffective. Because "plaintiffs may not maintain a suit for equitable relief" where "a post-deprivation suit for damages [is] available," as it is under either the Tucker Act or the Little Tucker Act, we lack jurisdiction over Plaintiffs' takings claims. *Clouser*, 42 F.3d at 1539 (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016–17, 104 S.Ct. 2862, 2879–80, 81 L.Ed.2d 815 (1984)). Accordingly, we dismiss those Claims (2nd A and 9th)

---

**11.** Claims 5th and 6th B also seek a declaration that Forest Service regulations are unauthorized and unlawful, respectively. Complaint at 24–26(# 1). But these two Claims are "primarily legal, [and] do not require further factual development." *Winter*, 900 F.2d at 1325. Accordingly, they are ripe.

**12.** Plaintiffs oppose summary judgment on the grounds that 33 U.S.C. § 1365(e) does not bar recovery for degradation of water quality under laws other than the Clean Water Act. Opp'n at 45–46(# 80). Whether or not this is true is immaterial to Claim 13th A, since the Clean Water Act is plainly the basis for that Claim.

for want of subject matter jurisdiction.[13]

### · 3. Sovereign Immunity

■ The absence of the United States' consent to be sued is a "fundamental, jurisdictional defect" which negates our subject matter jurisdiction. 14 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3654 (citing *U.S. v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)); *see also Gardner*, 103 F.3d at 887 n. 2. "Congress intended the [Quiet Title Act] to provide the *exclusive* means by which adverse claimants could challenge the United States' title to real property," and the United States otherwise possesses sovereign immunity. *Gardner*, 103 F.3d at 887–88 (citation omitted) (emphasis in *Gardner*). In particular, the APA cannot be used to challenge title to realty claimed by the United States. *McIntyre v. U.S.*, 789 F.2d 1408, 1410–11 (9th Cir.1986). Thus, to the extent this action requires us to adjudicate title disputes, failure to sue under the Quiet Title Act, 28 U.S.C. § 2409a, destroys our subject matter jurisdiction. *Gardner*, 103 F.3d at 887–88 & n. 2.

■ True, the Quiet Title Act by its own terms permits challenges to title if those challenges are brought under statutes unaffected by the Act: 28 U.S.C. §§ 1346, 1347, 1491, and 2410, 26 U.S.C. §§ 7424, 7425, and 7426, and 43 U.S.C. § 666 (the McCarran Amendment). 28 U.S.C. § 2409a(a); *Hage v. U.S.*, 35 Fed.Cl. 147, 159 (Fed.Cl.1996) (action under 28 U.S.C. § 1491 for a taking); *San Carlos Apache*, 463 U.S. at 566, 103 S.Ct. at 3213 (43 U.S.C. § 666 waives sovereign immunity). But Plaintiffs' did not sue under any of these statutes, not even the Quiet Title Act. Plaintiffs nonetheless assert that we possess jurisdiction to adjudicate their water rights "in the face of the McCarran Amendment." Opp'n at 26(# 80) (citing *U.S. v. Nevada*, 412 U.S. 534, 93 S.Ct. 2763, 37 L.Ed.2d 132 (1973)). This is not so. We do not have jurisdiction (under 43 U.S.C. § 666) to determine water rights as between individual private litigants and the United

States as a defendant; the McCarran Amendment only waives sovereign immunity as to comprehensive, system-wide water rights cases in state ·court. *Gardner*, 103 F.3d at 888. Since the Quiet Title Act expressly disallows suits to quiet title to water rights even when the action is brought under the Act, we see no way for individual private litigants to sue the federal government solely to quiet title to water rights. 28 U.S.C. § 2409a(a).

In short, because Plaintiffs' takings claims are barred, and they otherwise sue only under the APA, we cannot adjudicate any titles to real property. Plaintiffs are aware that ownership of the water rights, rights of way, and water sources is disputed by the United States, and this knowledge is enough to nullify our jurisdiction except insofar as the Quiet Title Act provides it. *See McIntyre*, 789 F.2d ·at 1411 (statute of limitations starts running when plaintiff knew or should have known of the United States' claim); *Michel v. U.S.*, 65 F.3d 130, 134 (9th Cir.1995) ("A plaintiff's cause of action for an easement across government land only accrues when the government, adversely to the interests of [the plaintiff], denies or limits the use of the roadway for access to [the plaintiff's] property." (citation omitted)). Claim 6th A is therefore plainly barred, since it asserts nothing more than that Plaintiffs own easements across Forest Service land.

■ Defendants additionally argue that all other Claims requiring adjudication of ownership of water rights, rights of way, or "water sources," as a predicate to further litigation, are likewise barred, because a determination of whether Defendants violated the APA necessarily requires a determination of title. Defs.' Summ. J. Mot. at 53(# 76). Although this question does not have as clear an answer, we think *McIntyre* supports Defendants' position. 789 F.2d at 1410–11. In *McIntyre* the Bureau of Land Management, after a series of administrative appeals, rejected McIntyre's application for a homestead on the grounds that the land in question had been withdrawn from home-

---

13. Since even the Court of Federal Claims would lack jurisdiction ·over these Claims, transfer un-

der 28 U.S.C. § 1631 would be pointless.

stead entry. *Id.* at 1409–10. Eventually the Bureau conveyed the land to a pair of corporations and McIntyre sued under the APA to set aside the conveyance. *McIntyre v. U.S.,* 568 F.Supp. 1, 2 (D.Alas.1983). In the meantime, the U.S. Supreme Court decided *Block v. North Dakota,* 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), and the Ninth Circuit decided *Humboldt County v. U.S.,* 684 F.2d 1276 (9th Cir.1982).

Based on *Block* and *Humboldt County,* the *McIntyre* district court distinguished between an action under the APA "ultimately directed toward the adjudication of disputed title," and one merely "to contest the authority of the [agency]." *McIntyre,* 568 F.Supp. at 3; *Humboldt County,* 684 F.2d at 1282 n. 7. Although the relief sought in *McIntyre* would not have automatically resulted in transfer of title to the plaintiff, the court discerned "no basis to distinguish [the instant] relief sought by judicial review from a declaration of the rights of the plaintiff to maintain an interest in and occupancy of the land." *McIntyre,* 568 F.Supp. at 3. The Ninth Circuit affirmed, without specifically addressing this distinction; we nevertheless believe this distinction is sound and apply it to the present case. *McIntyre,* 789 F.2d at 1410–11.

▇▇▇▇ As discussed above, Claim 6th A is ultimately directed toward the adjudication of disputed title and is therefore barred. The other Claims are problematic. Claim 7th A alleges an infringement of "inherent rights," but Plaintiffs point out no inherent rights distinct from the rights appurtenant to ownership of real estate. That is, 7th A appears to be nothing more than an allegation that Plaintiffs possess property rights in the National Forest, which rights have been infringed. It is therefore barred. The same is true for Claims 4th A and 4th B, which allege violations of the "Act of July 26, 1866 codified under 43 U.S.C. § 661 ... and regulations issued thereunder." Complaint at 23–24(# 1). Although superficially they accuse the Forest Service of violations of "procedures required by the 1866 Act," 43 U.S.C. § 661 spells out no such procedures—it simply provides substantive law governing priority of title. Moreover, Plaintiffs have failed to identify any regulations issued under 43 U.S.C. § 661, and we have found none, so the regulations require no "procedures" which Defendants may have violated. It may be that the Forest Service's alleged "pattern and practice of ... damaging ... vested or other water rights sources and [their] beneficial use" constitutes a failure to 1) "maintain and protect" the "possessors and owners of such vested rights," and 2) "acknowledge and confirm" the "right of way for the construction of ditches and canals," in violation of 43 U.S.C. § 661. Complaint at 23(# 1); 43 U.S.C. § 661. But such "damage," if challenged under the APA, is surely nothing more than a quiet title action in disguise; indeed, cases employing 43 U.S.C. § 661 have only used it—*substantively*—in actions to quiet title. *E.g., Adams,* 3 F.3d at 1260; *Hunter v. U.S.,* 388 F.2d 148, 152–53 (9th Cir.1967).

▇▇▇▇ As for the remaining Claims, the gravamen of each is that the Forest Service committed procedural violations in connection with their alleged activities. Complaint, 2nd C ("failure to comply with Executive Order 12630"); 5th ("The Forest Service has no authority ...."); 6th B ("[T]he regulations ... are unlawful."); 8th B ("Defendants' actions ... do not conform with their own procedures ...."); 10th ("[T]he federal agency's unconstitutional conduct."); 11th B ("interference with the possessory rights of Plaintiffs absent their input"). Allegations of procedural violations are cognizable under the APA, so we possess subject matter jurisdiction notwithstanding *McIntyre, Humboldt County,* and *Block. Humboldt County,* 684 F.2d at 1282 n. 7. This is particularly true of Claims 5th and 6th B, which may be decided without even adjudicating title, but it is also true of the other four Claims, which (though they presuppose the validity of Plaintiffs' possessory interests) are "ultimately directed toward" a declaration that the Forest Service violated procedural rules and an injunction against any further violation. Consequently, our resolution of those Claims which presuppose Plaintiffs' ownership of water rights, rights of way, or water sources, or which require us to adjudicate their ownership as an ancillary action, is not barred by failure to

sue under the Quiet Title Act; we cannot, however, hear Claims 4th A, 4th B, 6th A, or 7th A.[14]

### G. Supplemental Jurisdiction

▮ Plaintiffs also sue the Forest Service for violations of state law (Claims 1st A, 1st B, 2nd B, and 3rd). As discussed below, however, none of Plaintiffs' federal Claims—that is, the ones over which we have original jurisdiction—survive summary judgment. Accordingly, we have discretion to decline jurisdiction over these state law claims. 28 U.S.C. § 1367(c)(3). Exercise of our discretion is governed by the weighing of several factors, including economy, fairness, convenience, and comity. *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1309 (9th Cir.1992), *cert. denied*, 507 U.S. 1004, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993). In this case, we think suing the U.S. for violation of state law is almost certainly barred by sovereign immunity, so that comity and convenience are irrelevant; neither good nor ill will come of our retention of jurisdiction. As for economy, this case is complicated and has been going on for some time, so that this factor weighs in favor of exercising jurisdiction. The most important factor, though, is fairness: even ignoring the likely sovereign immunity problem, if the rest of the Complaint is any indication we think it likely the state causes of action have no merit. In our sound discretion, we decline jurisdiction over Claims 1st A, 1st B, 2nd B, and 3rd.

### IV. The Merits

In summary, those Claims on which we reach the merits are: 2nd C, 5th, 6th B, 8th B, 10th, and 11th B. We consider them in turn.

### A. 2nd C—Violation of EO 12630

Plaintiffs allege a violation of Executive Order 12630, 53 Fed.Reg. 8859 (1988), *"inter alia."* Complaint at 21–22(# 1). As Plaintiffs have failed to identify any other federal laws bearing on "taking of private property," only EO 12630 is before us. *Id.* at 21.

▮ Executive Order 12630 requires preparation of a "takings implication assessment," among other things. *Municipality of Anchorage v. U.S.*, 980 F.2d 1320, 1326 (9th Cir.1992). The threshold question we must answer is whether EO 12630 provides a private right of action; this is a question of first impression in this Circuit, since the *Municipality of Anchorage* court expressly did not reach the issue. *Id.* The only court to have reached this question is the District of New Mexico in *McKinley v. U.S.*, 828 F.Supp. 888, 893 (D.N.M.1993). The court concluded, based on the language of the Order, that there was "no basis to assert a claim against the Forest Service concerning compliance with E.O. 12630." *Id.* We agree with the *McKinley* court's reasoning; accordingly, Claim 2nd C fails as a matter of law.

### B. 5th—Regulations Promulgation

▮ Plaintiffs argue that the Forest Service lacks legal authority to promulgate regulations governing National Forest land. Complaint at 25(# 1). This argument is foreclosed by *Adams v. U.S.*, 3 F.3d 1254, 1260 (9th Cir.1993), among other cases, and is therefore without merit.

### C. 6th B—Regulation of Rights of Way

▮ Plaintiffs argue that the Forest Service lacks legal authority to regulate their asserted rights of way. Complaint at 26(# 1). This argument is likewise without merit, since the "Forest Service may proper-

---

14. Plaintiffs have, in effect, moved to amend their Complaint to plead the Quiet Title Act. Opp'n at 30(# 80). A plaintiff may so amend only by leave of court, which leave shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). Justice does not so require in this case. This case is two years old and discovery is closed. The proper time for amending a complaint has long since passed. We are mindful that some courts have construed an otherwise unclear claim as one to quiet title (*Humboldt County v. U.S.*, 684 F.2d 1276, 1279 n. 3 (9th Cir.1982)), and that Plaintiffs substituted attorneys midway through this litigation. Nonetheless, the expected procedure is to *first* research the law and *then* file a complaint, not the reverse. It was the duty of Plaintiffs' counsel, not the duty of the Court or of defense counsel, to identify the law under which to sue, and Plaintiffs simply must live with their counsel's oversight.

ly regulate the surface use of forest lands." *U.S. v. Goldfield Deep Mines Co.,* 644 F.2d 1307, 1309 (9th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982).

### D. 8th B—Reckless Disregard for Ownership

 Plaintiffs assert that the Forest Service should have investigated ownership of the alleged water rights and rights of way before taking action, in violation of the Forest Service manual. Complaint at 26–27(# 1). But the Forest Service manual is not binding legal authority. *Western Radio,* 79 F.3d at 901. This Claim is meritless.

### E. 10th—*Bivens*

 Plaintiffs sue under *Bivens,* 403 U.S. 388, 91 S.Ct. 1999. However, as pointed out by Defendants, they have failed to identify those individuals who allegedly violated their civil rights. Defs.' Summ. J. Mot. at 103(# 76). Consequently, they have failed to establish an element of the action on which they bear the burden of proof, and summary judgment is appropriate. *FDIC v. Meyer,* 510 U.S. 471, 486, 114 S.Ct. 996, 1005–06, 127 L.Ed.2d 308 (1994). Plaintiffs appear to concede this point, but request an extension of discovery to give them more time to identify the individuals liable. Opp'n at 46(# 80). Such an extension is inappropriate. The parties have litigated this case for two years, and Plaintiffs should have discovered who violated their rights by now; that they have not done so is strong evidence that their *Bivens* Claim is without merit.

### F. 11th B—Due Process

 Plaintiffs claim a due process right to be heard before the Forest Service infringes on their property rights. Complaint at 30(# 1). No such right exists. "We are unable to find any authority, and [Plaintiffs cite] none, suggesting that the [Forest] Service must consider vested water rights in its planning process." *Nevada Land Action Ass'n,* 8 F.3d at 719. Furthermore, if Plaintiffs' property rights have been infringed, they may seek just compensation in a properly pled takings action, through which they will be afforded ample due process. *Id.* This Claim fails as a matter of law.

### SUMMARY

In conclusion, Plaintiffs' Claims are non-justiciable as pled, fail as a matter of law, or fail at summary judgment:

1st A—supplemental jurisdiction declined. Part III.G.

1st B—supplemental jurisdiction declined. Part III.G.

2nd A—failure to plead damages destroys subject matter jurisdiction. Part III. F.2.

2nd B—supplemental jurisdiction declined. Part III.G.

2nd C—EO 12630 provides no private right of action. Part IV.A.

3rd—supplemental jurisdiction declined. Part III.G.

4th A—failure to plead Quiet Title Act destroys subject matter jurisdiction. Part III.F.3.

4th B—failure to plead Quiet Title Act destroys subject matter jurisdiction. Part III.F.3.

5th—the Forest Service may legally promulgate regulations governing its own land. Part IV.B.

6th A—failure to plead Quiet Title Act destroys subject matter jurisdiction. Part III.F.3.

6th B—the Forest Service's regulations are lawful. Part IV.C.

6th C—threatening civil or criminal penalties is not final agency action and cannot be reviewed. Part III.B.

7th A—failure to plead Quiet Title Act destroys subject matter jurisdiction. Part III.F.3.

7th B—threatening civil or criminal penalties is not final agency action and cannot be reviewed. Part III.B.

8th A—threatening civil or criminal penalties is not final agency action and cannot be reviewed. Part III.B.

8th B—no relief is legally available for violation of the Forest Service manual. Part IV.D.

9th—failure to plead damages destroys subject matter jurisdiction. Part III. F.2.

10th—failure to identify individual *Bivens* violators makes summary judgment appropriate. Part IV.E.

11th A—Plaintiffs fall outside the NEPA zone of interests and therefore lack standing. Part 111.C.

11th B—there is no due process right to be heard prior to agency action. Part IV.F.

12th—Plantiffs fall outside the NEPA zone of interests and therefore lack standing. Part 111.C.

13th A—failure to comply with Clean Water Act notice requirements destroys subject matter jurisdiction. Part III. F.1.

13th B—Plaintiffs fall outside the NEPA zone of interests and therefore lack standing. Part 111.C.

The Constitution protects citizens from arbitrary government actions. But this same Constitution limits the federal courts' power to hear "cases and controversies." We are not unsympathetic to the plight of Nevada's ranchers; as neighbors, permittees, and tenants of the United States, owner of 87% of the state of Nevada, they must truly contend with a landowning leviathan. A Complaint such as this, however, is not the proper method for redressing their grievances.

*IT IS. THEREFORE. HEREBY OR-DERED THAT* Defendants' motion for summary judgment (# 76) is GRANTED.

*IT IS FURTHER ORDERED THAT* the Clerk shall enter judgment accordingly.