**Weldon McKINLEY, Plaintiff,**

v.

**The UNITED STATES of America, Edward Madigan, Secretary of Agriculture, F. Dale Robertson, Chief of the U.S. Forest Service, David Jolly, Regional Forester, U.S. Forest Service, Southwestern Region, and C. Phil Smith, Forest Supervisor, Cibola National Forest, Defendants.**

Civ. No. 91–822–LH/RWM.

United States District Court,
D. New Mexico.

May 28, 1993.

Harold D. Stratton, Jr., Stratton & Cavin, Albuquerque, NM, Karen Budd–Falen, Budd–Falen & Associates, Cheyenne, WY, for plaintiff.

John W. Zavitz, U.S. Attys. Office, Albuquerque, NM, for defendants.

## MEMORANDUM OPINION AND ORDER

HANSEN, District Judge.

THIS MATTER comes on for consideration on Defendants' Motion to Affirm the Administrative Decision or in the Alternative for Summary Judgment, filed October 21, 1991 and Plaintiff's Motion to Set Aside Defendants' Administrative Decision or in the Alternative for Summary Judgment, filed December 16, 1991. Having considered the motions and responses, the administrative record, and being otherwise fully advised in the premises, the Court finds that defendants' Motion is well taken and should be granted. The Court finds that plaintiff's Motion is not well taken and should be denied.

This lawsuit seeks to set aside a decision by officials of the U.S. Forest Service which provided for a reduction in the number of cattle permitted to graze on the 28,719 acre Barranca allotment located in the Cibola National Forest in the Manzano Mountains of central New Mexico. This allotment was formed in 1973 by consolidating three existing allotments because range evaluations from the 1950s and 1960s indicated the range was in generally poor condition and the Forest Service believed that the combination of the three allotments would provide an opportunity for improved management. (Administrative Record [AR] Ex. 54 p. 1)

At the time of the consolidation, appellant Weldon McKinley was issued a Term Grazing Permit for 201 cattle on the Barranca allotment. Range evaluations indicated that a small portion of the allotment was in fair condition with an upward trend, but that the majority of the range was in unsatisfactory condition with a downward trend. Id. Beginning in 1975, appellant elected to graze less than the number of cattle permitted. According to the Forest Service, average use between 1973 and 1988 was 50% of permitted numbers. Id.

On July 7, 1988, McKinley was advised that a reduction in livestock numbers on the allotment had been recommended, based on Forest Service range studies. In August, 1988, and January, 1989, the Forest Service met with McKinley to discuss the allegedly unsatisfactory range conditions.

On July 21, 1989, defendant Cibola Forest Supervisor C. Phil Smith decided that grazing should be reduced to 100 cattle. On September 5, 1989, McKinley appealed that decision. On October 10, 1989, Smith modified his July 21 decision, based in part on the results of the Production/Utilization Study completed on September 28, 1989, and determined that the Barranca Allotment should be permitted 112 head of cattle.

McKinley appealed the decision and following oral argument the supervisor's decision was affirmed by the Deputy Regional Forester on May 14, 1990. The Office of the Chief of the Forest Service declined to review the decision on June 15, 1990 and the Deputy Regional Forester's decision therefore became the final agency action. McKinley filed this lawsuit on August 20, 1991.

The U.S. Forest Service is authorized to issue grazing permits on lands within the National Forests by the general language of 16 U.S.C. § 580*l* and by the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. § 1701 et seq. which provides in part that:

> ... permits and leases for domestic livestock grazing ... with respect to lands within National Forests ... shall be for a term of ten years subject to such terms and conditions the Secretary concerned deems appropriate and consistent with the governing law, including, but not limited to, the authority of the Secretary con-

cerned to cancel, suspend, or modify a grazing permit or lease, in whole or in part, pursuant to the terms and conditions thereof ... 43 U.S.C. § 1752(a).

FLPMA further provides that:

In all cases where the Secretary concerned has not completed an allotment management plan ..., the Secretary concerned shall incorporate in grazing permits and leases such terms and conditions as he deems appropriate for management of the permitted or leased lands pursuant to applicable law. The Secretary concerned shall also specify therein the numbers of animals to be grazed and the seasons of use and that he may reexamine the condition of the range at any time and, if he finds on reexamination that the condition of the range requires adjustment in the amount or other aspect of grazing use, that the permittee or lessee shall adjust his use to the extent the Secretary concerned deems necessary. Such readjustment shall be put into full force and effect on the date specified by the Secretary concerned. 43 U.S.C. § 1752(e).

The Secretary of Agriculture has also promulgated regulations which address the administration of grazing lands. 36 C.F.R. § 222.5(a) provides that:

The Chief, Forest Service, is authorized to cancel, modify, or suspend grazing and livestock use permits in whole or in part as follows: ... (8) Modify the seasons of use, numbers, kind, and class of livestock allowed on the allotment to be used under the permit, because of resource condition, or permittee request. One year's notice will be given of such modification, except in cases of emergency.

Appellant argues that the Forest Service decision to reduce his grazing rights is arbitrary, capricious, an abuse of discretion and not in accordance with the law. He also argues that the agency decision should be set aside because the Forest Service failed to comply with Executive Order 12630 because it did not conduct a Takings Implication Assessment (TIA) prior to modifying the appellant's grazing permit.

*Standard of Review*

The function of this Court on review is to determine whether the defendants acted in a manner that was arbitrary, capricious, an abuse of discretion or contrary to law. 5 U.S.C. § 706(2)(A). Review under this provision of the A.P.A.

... provokes inquiry whether the administrative decision were based on a consideration of all relevant factors and whether there was a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency. The Court's function is exhausted where a rational basis is found for the agency action taken.

*Sabin v. Berglund*, 585 F.2d 955, 959 (10th Cir.1978), quoting from *Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

The scope of review of a Forest Service decision to reduce permitted grazing was addressed by the Ninth Circuit which concluded that "the district court should ascertain whether the agency's factual findings as to range conditions and carrying capacity are arbitrary and capricious. If not, the matter ends there." *Perkins v. Bergland*, 608 F.2d 803, 807 (9th Cir.1979).

Appellant seeks judicial review of the decision of the Cibola Forest Supervisor to reduce the number of cattle permitted to graze on the Barranca allotment. He argues that the Forest Service can modify the seasons of use, numbers, kinds and class of livestock allowed only because of resources condition or at the request of the permittee. 36 C.F.R. § 222.4. He contends that because he did not request a modification and because the Barranca allotment is in a stable or upward condition, the decision was not in accordance with the provisions of 36 C.F.R. § 222.4.

It is clear that the Forest Supervisor has the ability to reduce permitted numbers on the allotment. 36 C.F.R. § 222.5(a). The dispute in this case concerns the accuracy of the Forest Service studies which found that the range condition in the allotment was

poor or very poor, indicating a need for a reduced stocking level on the allotment.

Range analysis of the allotment was performed in 1973, 1977–78, 1988 and 1989. AR Ex. 18, 23, 24, 34a. The techniques utilized in this case included Parker Three Step Clusters, paced transects, and ocular estimates.

Parker Three Step Cluster studies were conducted in 1973, 1977–78 and 1988. (AR Ex. 2) The purpose of these studies is to compare range conditions at the same spot over time. Permanent iron makers are placed in the grounds and metal tape is strung between the markers. Vegetative and soil conditions are examined and photographs taken to evaluate the current trend and these are compared with past data collected from the same location.

A paced transect was conducted by the Forest Service in June 1989 at the request of appellant's expert, Ralph Rainwater, who participated in the study. It involves walking a randomly selected line of 100 data points with soil and vegetation examined at a predetermined (i.e., every other pace) spacing.

Ocular estimates are merely visual observations of range conditions by range conservationists. They are conducted on an annual basis.

Production/utilization studies were also conducted by the Forest Service in 1982, 1983 and 1989. (AR Ex. 21, 23, 24) They measure the production of forage on the site and utilization or consumption of that forage by cattle.

Appellant's expert argues that the studies actually shows that the range condition is improving. Further, he contends that the sample size does not conform to the generally accepted sample size used by range experts.

The Forest Service argues that the evaluation of range trend is merely one factor to consider in the overall evaluation of range resources. Its findings demonstrate that in 1988, despite appellant's voluntary reduction in the number of grazing cattle on the property, only 8% of the allotment was in fair condition with 92% in poor or very poor condition and that the trend on 50% of the allotment was static, indicating that conditions were not improving, and a reduced stocking level was necessary.

The appellant's permit states that it "may be modified at any time during the term to conform with needed changes brought about ... because of resource condition or other management needs." (AR Ex. 7) The Court agrees with the Forest Service that by the permit's own terms it is range condition, not trend, which is evaluated to determine grazing capacity.

Appellant argues that the Forest Service's failure to use a larger sample size renders the range studies inaccurate. This contention is disputed by the Forest Service experts who claim that the methodology used is scientifically based and widely accepted. Their data was gathered over many years by several different range conservationists who consistently agreed that intensified management and decreased grazing was appropriate. That the agency chose to follow the opinions of its own experts is not grounds for overturning the decision under the arbitrary and capricious standard, providing that the reasons for choosing to follow its own technical employees are not arbitrary and capricious. *Webb v. Gorsuch,* 699 F.2d 157 (4th Cir.1983). To prove that the agency employed irrational methods for calculating carrying capacity, a contesting party must show that there is virtually no evidence in the record to support the agency's methodology in gathering and evaluating the data. *Perkins v. Bergland,* supra at 807 fn. 12. The Court "must refrain from entering that fray if it turns out that the appellant's position would require a choice between experts." Id. at 807. The burden of proof under the arbitrary and capricious standard is on the party challenging the decision *Park County Resource Council v. U.S. Dept. of Agriculture,* 817 F.2d 609 (10th Cir.1987), and appellant has not met that burden.

■ Appellant also contends that the decision should be set aside because the Forest Service failed to comply with Presidential Executive order 12630, 53 Fed.Reg. 8859 (March 15, 1988), which requires federal agencies, in their predecisional analyses, to

assess the impact of proposed actions on private property rights. Section 6 of E.O. 12630 expressly addresses judicial review and provides that "this order is intended only to improve the internal management of the Executive branch and is not intended to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers or any person." Section VIII of the Attorney General's Guidelines for the Evaluation of Risk and Avoidance of Unanticipated Takings (June 30, 1988) implementing E.O. 12630 also reiterates that intent and additionally provides that:

Neither these Guidelines, the Appendix, nor the deliberative processes or products resulting from their implementation by agencies shall be treated as establishing criteria or standards that constitute any basis for judicial review of agency actions. Thus, the extent or quality of an agency's compliance with the Executive Order or these Guidelines shall not be justiciable in any proceedings for judicial review of agency action.

The appellant, therefore, has no basis to assert a claim against the Forest Service concerning compliance with E.O. 12630.

Even if a cause of action did exist under the Administrative Procedure Act for review of the decision that a TIA is not necessary in this situation, the Forest Service's decision that none was required is clearly supported by case law. "It is safe to say that it has always been the intention and policy of the government to regard the use of its public lands for stock grazing, either under the original tacit consent or, as to national forests, under regulation through the permit system, as a privilege which is withdrawable at any time for any use by the sovereign without the payment of compensation." *Swim v. Bergland,* 696 F.2d 712, 719 (9th Cir.1983).

■ Appellant argues that the reduction in permitted numbers is a taking of private property because it affects the value of his associated base property which he holds in fee simple. He contends that reducing his grazing allowance by 44% will have the effect of rendering his entire operation, including

his private property, useless. He cites a computer program model showing the relationship between the fixed costs of ranching operation, the number of livestock grazed on Forest Service managed lands, and the amount of money those animals would have to generate when sold on the market to make the ranching operation viable and submitted appraisal reports on the allotment and the base property (AR Ex. 50, 51) in support of his argument.

While the Court does not doubt that the modification of appellant's permit has a negative effect on the value of his base property and the economic viability of his ranching operation, the value added to his property by his holding the permit is clearly a "benefit and privilege bestowed by the government" which is specifically excluded from E.O. 12630. "Although the permits are valuable to ranchers, they are not an interest protected by the Fifth Amendment against taking by the government who granted them with the understanding that they could be withdrawn ... without payment of compensation." *Pankey Land and Cattle Co. v. Hardin,* 427 F.2d 43, 44 (10th Cir.1970). No compensable taking was implicated by the Forest Service's actions in this case.

The decision to reduce the level of grazing permitted on the Barranca allotment is not arbitrary or capricious. The permit itself and the regulations governing the Forest Service give the agency the discretion to take such an action. The opinions of the appellant and his experts were made part of the record and were considered by the Regional Forester hearing the administrative appeal. (AR Ex. 32, 37, 48, 49, 50, 51) The reasons for disregarding the appellant's experts opinions were clearly stated in the appeal decision. (AR Ex. 56 pp. 5–10) The Forest Service's generic TIA which concludes that actions taken pursuant to range management regulations do not present a takings implication is an accurate statement of the case law on this subject. Although the Forest Service apparently did not conduct a TIA prior to modifying this grazing permit, its decision that none was required is not arbitrary or capricious because no compensable property rights exist in grazing permits.

IT IS THEREFORE ORDERED that the May 14, 1990 decision by the Deputy Regional Forester is affirmed.