**KANE LAND AND LIVESTOCK, INC., Petitioner,**

**v.**

**UNITED STATES of America; United States Forest Service; United States Department of Agriculture, Respondents.**

No. 96–CV–121–J.

United States District Court,
D. Wyoming.

May 23, 1997.

John D. Ward, Sheridan, WY, for Petitioner.

Carol A. Statkus, Assistant U.S. Attorney, David D. Freudenthal, U.S. Attorney's Office, Cheyenne, WY, Lois J. Schiffer, Stephanie M. Parent, Department of Justice, Washington, DC, for Respondents.

## ORDER AFFIRMING ADMINISTRATIVE APPEAL

ALAN B. JOHNSON, Chief Judge.

Kane Land and Livestock Inc., appeals the Forest Service's decision to suspend a portion of its grazing permit for the years 1996, 1997, and 1998, as a sanction for the corporation's failure to comply with the terms and conditions of the permit. The suspension resulted from Kane Land and Livestock's action in taking 167 cow/calf pairs onto the Freezeout grazing allotment five days prior to the deferred on-date of July 5, 1995.

The penalty was originally a 20% reduction for three years. The District Ranger modified the penalty to 20% the first year (1996), 10% the second year and 0% the third year, if Kane Land and Livestock complies with the conditions of the permit. If not, then the 20% would apply to all three years. Kane Land and Livestock seeks to set aside the entire suspension.

### FACTUAL BACKGROUND

Basically, only two facts are disputed in this case: (1) whether the delayed on-date was necessary; and, (2) whether the Forest Service complied with its own regulations. The following facts are undisputed:

Kane Land and Livestock, Inc., now wholly owned by Chas Kane, has been operating in Sheridan County, Wyoming, for many years. Members of the Kane family have ranched in the area for three generations. Kane Land and Livestock uses grazing range in the Bighorn National Forest for the summer months under the federal range permitting system. Its grazing lease includes areas in the Freezeout C & H and the Lower Tongue C & H.

The leases contain the following provisions under "Part 2—GENERAL TERMS AND CONDITIONS":

2. *Bill for Collection.* Each year, after validation and prior to the beginning of the grazing season, the Forest Service will send the permittee a Bill for Collection specifying for the current year the kind, number, and class of livestock allowed to graze, *the period of use,* the grazing allotment, and the grazing fees. This bill, when paid, authorizes use for that year and becomes part of this permit.

\* \* \* \* \* \*

8. *Range and Livestock Management.*

\* \* \* \* \* \*

(b) The number, kind, and class of livestock, *period of use* and grazing allotment specified in the permit may be modified when determined by the Forest officer in charge to be needed for resource protection. Except in ex-

treme emergencies where resource conditions are seriously affected by livestock use or other factors, such as fire, drought, or insect damage, notice of a scheduled reduction of numbers of livestock numbers or *period of use* under a term permit will be given (1) full year before a modification in permitted numbers or period of use becomes effective. *This does not apply to annual adjustments in grazing as provided for in Section 8(c).*

(c) *When, in the judgment of the Forest officer in charge, the forage is not ready to be grazed at the beginning of the designated grazing season, the permittee, upon request of the Forest officer, will delay placing livestock on the grazing allotment to avoid damage to the resources.* The permittee will remove livestock from Forest Service-administered lands before the expiration of the designated grazing season upon request of the Forest officer when it is apparent that further grazing would damage the resources.

(Rec.43) (italicized emphasis added).

In 1994, Kane Land and Livestock was managed by Ken Kane. At that time Chas Kane was only a part owner. During 1994, Kane Land and Livestock did not fully comply with the permit terms and conditions, generally due to failure to maintain improvements such as water tanks. At that time, Chas Kane complained to the Forest Service that Kane Land and Livestock was not in full compliance.

In 1994, the Freezeout allotment was overgrazed and the Forest Service required all permittees to remove their cattle off the allotment early. They were notified on September 13, 1994, that they needed to remove their cattle by September 20, 1994, approximately 20 days before the end of the usual allowed grazing period. The notification letter told the permittees that they would receive a credit on grazing fees and that a meeting would be scheduled in October or November to discuss any adjustments that would be needed for the 1995 season.

The record reveals that this same allotment has historically been an area with problems of overuse. (Rec.105–113).

All permittees, including Kane Land and Livestock, removed their stock early as requested.

During this period of time the Forest Service was attempting to better manage its grazing land, apparently in response to general public criticism plus specific lawsuits that called into question the overgrazed condition of the range lands it leases to ranchers.

At a meeting held on November 30, 1994, the District Ranger informed all permittees that due to poor range conditions that the on-date for 1995 for the West rotation of the Freezeout would be deferred from June 16 to July 5, 1995. In previous years such decisions had been made immediately before the scheduled on-date. But as the District Ranger later explained, that procedure had proved to be unworkable because ranchers had complained that they needed more time to make arrangements to move cattle. Moving cattle requires permits and workers and can require trucks for transport.

Chas Kane, then still a part-owner of Kane Land and Livestock, attended the November meeting. He immediately protested that the delayed on-date was not necessary because he believed that there was sufficient forage on the allotments. However, he presented no independent evidence to show that there was sufficient forage.

The Forest Service and Chas Kane communicated several times over the next months regarding the deferred on-date, with Mr. Kane arguing against it. Sometime in early 1995, Chas Kane purchased the entire ownership in Kane Land and Livestock corporation and became its sole shareholder and manager.

In early 1995, Kane Land and Livestock applied for a permit with the traditional on-date despite the clear earlier verbal notice of the delayed on-date. On June 13, 1995, the Forest Service responded to the application with a Bill for Collection and the Annual Application showing the July 5, 1995 on-date. On June 23, 1995, Kane Land and Livestock

paid the bill that specified the dates July 5, 1995 through October 10, 1995, for the Freezeout allotment.

Despite the clear notice of the delayed on-date received at the November 30, 1994 meeting, Chas Kane let the range conservation officer know he intended to disregard the delayed on-date. (Rec.19–20). On June 30, 1995, Kane Land and Livestock was caught with its cattle on the Freezeout C & H allotment, five days before the permit allowed it to have cattle on the allotment.

Kane Land and Livestock was the only one of the 12 permittees in the Freezeout area who failed to comply with the delayed on-date of July 6, 1995. On August 10, 1995, Kane Land and Livestock paid the bill ($139.44) for unauthorized use during the June 30 to July 4 period.

On August 11, 1995, Kane Land and Livestock responded to the Forest Service's letter requesting that he show cause why its cows were put on the range ahead of the permitting schedule. Kane Land and Livestock responded with a letter stating that the 167 cow/calf pairs were moved early because they were on the same ranch as other cattle that could be moved early and that if all had not been moved at the same time it would have required "another trail and 3 to 4 more days."

On October 1, 1995, the District Ranger issued a Decision Notice suspending 20% of Kane Land and Livestock's permitted number of cattle authorized to graze during the 1996, 1997 and 1998 seasons. Kane Land and Livestock appealed, to which the District Ranger responded with a detailed Responsive Statement on December 4, 1995. On March 5, 1996, the Forest Supervisor's decision affirmed the District Ranger's decision but modified the penalty to reduce it to 10% the second year and 0% the third year provided that Kane Land and Livestock otherwise complied with the terms and conditions of the permit.

Kane Land and Livestock appealed the Forest Supervisor's decision to the Regional Forester, who issued a decision affirming on April 8, 1996. This case was filed on June 7, 1996.

## REVIEW UNDER ADMINISTRATIVE PROCEDURES ACT

The parties agree that this appeal involves an informal agency decision to be reviewed under the section 706 of the Administrative Procedures Act. 5 U.S.C. § 706. In its decision in the case *Olenhouse v. Commodity Credit Corporation*, 42 F.3d 1560 (10th Cir. 1994), the Tenth Circuit followed the United States Supreme Court's earlier decision in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) and fully explained the standards and procedures to be followed by district courts in reviewing agency decisions under the Administrative Procedures Act.

> Informal agency action must be set aside if it fails to meet statutory, procedural or constitutional requirements or if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law..... An agency's decision is entitled to a presumption of regularity, but the presumption is not to shield [the agency's] action from a thorough, probing, in-depth review."
>
> We have held that the essential function of judicial review is a determination of (1) whether the agency acted within the scope of its authority, (2) whether the agency complied with prescribed procedures, and (3) whether the action is otherwise arbitrary, capricious or an abuse of discretion.... Determination of whether the agency complied with prescribed procedures requires a plenary review of the record and consideration of applicable law.

\* \* \* \* \* \*

> The duty of a court reviewing agency action under the "arbitrary or capricious" standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts as found and the decision made.

\* \* \* \* \* \*

> [I]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself. Thus, the grounds upon which the agency

acted must be clearly disclosed in, and sustained by, the record.

\* \* \* \* \* \*

In addition to requiring a reasoned basis for agency action, the "arbitrary or capricious" standard requires an agency's action to be supported by the facts in the record. [I]nformal agency action will be set aside as arbitrary if it is unsupported by "substantial evidence."

\* \* \* \* \* \*

Evidence is substantial in the APA sense if it is enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion to be drawn is one of fact.

\* \* \* \* \* \*

With respect to the factual support for the agency's action, we have held the "substantial evidence" test to impose affirmative duties on a district court: the court must consider conflicts in the record and "define, specifically, those facts which it deems supportive of the agency decision if that is the court's resolution of the matter." This requires a plenary review of the record as it existed before the agency.

*Olenhouse,* at 1573–76 (citations omitted).

The harmless error rule applies to judicial review of administrative proceedings and such administrative proceedings will not require reversal unless petitioner can show that it was prejudiced by the error. *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 740 (10th Cir.1993).

It is clear that a grazing lease is a privilege which does not confer any vested right and which may be suspended under certain conditions. The issues in this appeal are whether the decision to delay the on-date was arbitrary or capricious, or in violation of Forest Service regulations; whether proper procedure was followed regarding the delayed on-date; whether the decision that Kane Land and Livestock wilfully violated its permit by violating that delayed on-date was arbitrary and capricious; the appropriateness of the penalty; and, whether the administrative appeal process was arbitrary and capricious or in violation of the regulations.

## ANALYSIS OF CONTENTIONS ON APPEAL

For convenience the court will analyze Kane Land and Livestock's contentions on appeal using the same numbering system for the issues as did Kane Land and Livestock.

**Issue 1**—Kane Land and Livestock contends that the April 8, 1996 Decision of the Reviewing Officer was arbitrary and capricious because he allegedly failed to consider all issues raised on appeal and is therefore arbitrary, capricious and an abuse of discretion. Kane Land and Livestock contends that the April 8, 1996 decision letter fails to consider its contentions that the Forest Service's notices of the delayed on-date failed to comply with regulations for the modification of permits. Kane Land and Livestock also contends that the Deputy Regional Forester's decision letter failed to consider its arguments that the earlier decision was arbitrary and capricious because the decision regarding the on-date was made without sufficient scientific data. Thus Kane contends that the Deputy's decision lacks reference to relevant data, substantive analysis and articulation of a rational connection with the decision made.

It is true that the Reviewing Officer's decision is brief, one page, and focuses primarily on whether there was sufficient evidence a violation occurred and whether the penalty imposed was appropriate. However, the decision found that "there is no evidence that District Ranger or Forest Supervisor overlooked or misinterpreted any information with regard to the issues raised in the first level appeal." These issues are the very issues that petitioner contends are not addressed. The summary, although brief, is sufficient to inform Kane Land and Livestock of the reasoning for the decision and to show a rational connection between the facts found in the earlier decision and the decision made on appeal.

Further, it appears that the issues which petitioner complains were not addressed— that notices were not in compliance with procedural regulations and that the deferred on-date was an arbitrary and capricious decision—were fully addressed by the Forest Supervisor's decision of March 5, 1996. The

Forest Supervisor modified the penalty because he believed such mitigation was appropriate where there had not been written notice of the right to appeal the delayed on-date decision when it was first communicated to petitioner in November of 1995. Thus, the issue of the lack of following procedures had been addressed and the penalty had been reduced accordingly before the appeal reached the Deputy Regional Forester. The Reviewing Officer reviewed that reduction, and by implication the reason for the reduction, and found them to be appropriate. (Rec.231) ("I find that the District Ranger's decisions, as modified by the Forest Supervisor, ... was appropriate and is upheld.") Thus, because the Reviewing Officer noted and affirmed the penalty modification made for the reason of failure to follow proper procedures, it is clear that petitioner's contentions about lack of proper procedure were addressed.

Kane Land and Livestock's contention that an extensive opinion is required at the level of the Deputy Regional Forester confuses the type of comprehensive analysis required of the District Courts under *Olenhouse* with the review that must be conducted by the agency. Exhaustive opinions are not required at all levels of agency review. This court reviews the entire administrative record under the standards announced in *Olenhouse*. If a particular contention is not addressed directly at one level of administrative review, that contention may be reviewed by this court under *Olenhouse*. The court finds that the Deputy Regional Forester's Decision is sufficient because it, together with the earlier decisions in the administrative process, fully set forth the grounds upon which the agency acted and therefore those grounds are clearly disclosed in the administrative record.

**Issue 2**—This is really five issues as stated by Kane Land and Livestock. It states the overall issue as follows:

*Issue 2*—Whether or not the Forest Supervisor erred in his decision affirming the decision of the District Ranger finding Kane in violation of its grazing permit; that such decision was arbitrary and capricious and was in error in its finding of fact

and application of the rules, regulations and policies governing the Forest Service including the following respects:

Kane Land and Livestock then divides this second issue into five subparts. The court will address each in turn.

*Issue 2(a)*—The decision in November, 1994 of the District Ranger to defer the 1995 season of use date for Kane's grazing permit was arbitrary and capricious.

■ Kane Land and Livestock contends that the on-date decision was faulty for several reasons. First, because the Forest Service uses the term "range health" instead of "range readiness" in its decisions on appeal. As explained in the District Ranger's Responsive Statement to this appeal, the issue of the overgrazed areas is not an issue of "traditional range readiness, it is an issue of reestablishing vigor in plants grazed substantially beyond utilization standards during the 1994 grazing season." (Rec.32).

Subsection 8(c) of the grazing permits provides for deferred on-dates when in the judgment of the Forest officer "the forage is not ready to be grazed at the beginning of the designated grazing season." Whether the issue of when the forage is "ready to be grazed" is to be determined as "range readiness" or "range health" due to previous overgrazing, is really splitting hairs. What is important is that the lease gives total discretion to the Forest officer to use his or her own judgment on the issue of when the "forage is not ready to be grazed."

■ Second, Kane Land and Livestock contends the on-date decision was faulty because it was based upon the use of "ocular estimates" which are confusing and therefore cannot support the Forest officer's decision to delay the on-date.

"Ocular estimates are merely visual observations of range conditions by range conservationists." *McKinley v. United States*, 828 F.Supp. 888, 891 (D.N.M.1993).

The Forest Service acknowledges that ocular estimates are "time consuming and often confusing" and, as its representatives explained at the November 30, 1994 meeting, it is considering two newer methods for meas-

uring use. (Rec.84). However, ocular estimates are the traditional method used to determine range condition and were the method in use at the time of the decision to delay the on-date.

The burden of proof under the arbitrary and capricious standard is on the party challenging the decision. *McKinley, supra,* (citing *Park County Resource Council v. U.S. Dept. of Agriculture,* 817 F.2d 609, (10th Cir.1987)). Thus, Kane Land and Livestock has the burden of showing that the use of ocular estimates was not relevant data to be considered by the Forest Service. However, Kane Land and Livestock submitted no independent evidence to show that the ocular estimates in question were wrong. Thus, there is no data in the record to contradict the reliability of the ocular estimates of these allotments made in the fall of 1994. The record does show a clear and rational relationship between the data collected and range health and therefore the Forest Service articulated a rational connection between the facts as found and the decision made. (Rec.32–33, 86).

■ Third, Kane Land and Livestock contends the on-date decision was faulty because the use of ocular estimates must be done in conjunction with cuttings. The Forest Service acknowledges that it often uses clippings in conjunction with ocular estimates. However, as noted in the administrate record in this case, ocular estimates were done and no cuttings were taken. In the Responsive Statement the Forest Service notes that the individuals performing the estimates had taken clippings in other areas that season which added to their ability to make accurate ocular estimates in this area. (Rec.33). Three individuals spent 6 person days examining the entire area where they noted 60% or more use in many of the riparian areas of the allotment. *Id.* Forest Plan standards provide for a maximum of 50% use. *Id.* The 1995 on-date delay is a continuation of the Forest officer's work to remedy overgrazing in the 1994 season. The 1994 season was closed early and the 1995 season was opened late, all in an attempt to restore root reserves of plants in the specific areas found to be overgrazed—the Schuler Park, Hay Creek

and Dry Fork pastures of the Freezeout allotment. Once again there is no evidence in the record to show that the ocular estimates of percentage of plant use were wrong and therefore that the Forest Officer's decision was not based on relevant data. Kane Land and Livestock was free to bring independent evidence of the condition of the range to the attention of the Forest officer before deciding to violate the delayed on-date. Having failed to do so, there is no evidence in the record to contradict the data prepared by Forest Service personal using the traditional method employed in the area.

Further, Kane Land and Livestock's position on ocular estimates is inconsistent because while it criticizes the Forest Service's use of ocular estimates to establish the need for a deferred on-date; it also complains that the on-date was not determined by means of the traditional ride, which uses ocular estimates obtained during a joint ride undertaken by the range officer and the permit holders shortly before the turn-out date to determine range readiness. Further, Kane Land and Livestock's contention that there was sufficient forage is apparently based upon nothing more than Chas Kane's own ocular estimate of the available forage.

■ Fourth, Kane contends that the on-date decision was arbitrary and capricious because subsection 8(c) provides for a decision on whether the range is ready only "at the beginning of the designated grazing season" and therefore it was erroneous to make the determination the previous fall.

Reading section 8 as a whole, it gives unbridled discretion to the Forest officer in charge. Subsection 8(c) does not require that the determination be made only at the beginning of the season, it only requires that a determination be made that "the forage is not ready to be grazed at the beginning of the season."

In deference to the ranchers' concerns the previous year that they need more lead time to prepare for delayed on-dates, the Forest Service made its determination at the end of the 1994 season. To read the grazing lease as does Kane Land and Livestock would remove the Forest Service's ability to re-

spond to the ranchers' legitimate concerns regarding planning ahead for the next grazing year.

■ Kane Land and Livestock contends that because the east portion of the Freezeout allotment was determined by a traditional riding tour immediately before the on-date, it was improper not to do the same for the entire allotment. However, the east rotation had not been so overused the previous year that plant reserves were seriously compromised. *Compare* Rec. 86–88 (discussing Freezeout west rotation) with Rec. 88 (discussing Freezeout east rotation). Thus, the fact that some of the range had not been damaged is a rational basis for determining the condition of that range at a different time than the portions of the allotment that had been damaged and withdrawn from grazing early the preceding fall. Thus the Forest Service examined relevant data on the different portions of the Freezeout allotment and articulated a rational connection between those facts and its decision to treat the east portion differently from the west portion.

*Issue 2(b)*—That the decision of the District Ranger to defer on-dates was not issued in compliance with the rules, regulations and policies of the Forest Service.

Kane contends that he was not advised of the appealability of the decision to delay the on-date as required by 36 C.F.R. 251, Subpart C (requiring written notice of the appealability of decisions) and 36 C.F.R. 222, Subpart A (requiring s one-year notice of a modification to season of use of grazing permit).

The Forest Supervisor found that because notice of a right to appeal the delayed on-date decision was required, but was not given, the penalty imposed should be substantially reduced for the second and third years.

■ This court holds that a decision to delay the on-date, made pursuant to paragraph 8(c) of the leases, is not a decision that is subject to the requirement that formal notice be given of a right to appeal as set forth in 36 C.F.R. 251 Subpart C. Those regulations are directed toward "a written decision by an authorized Forest Service line officer with regard to issuance, approval, or administration of the" leases. (Rec.1).

Subsection 8(c) is designed to provide the Forest officer with discretion to remedy short-term localized conditions on an individualized basis. It allows the Forest officer to request early removal or delayed turn-out of livestock as the conditions require. This type of "annual adjustment in grazing" are not the type of decisions that are intended to be subject to the administrative appeal notice provisions. The very nature of the discretion given to the Forest officer to order early removal or delayed on dates under subsection 8(c) shows that it is intended to be exercised in the field, and to allow judgment based upon unexpected conditions. It would be incompatible with the purpose of subsection 8(c) of the leases to impose a formal and lengthy appeal process on decisions that must be made quickly in the field in view of conditions that can develop rapidly.

■ Further, even if notice of the right to appeal the decision was required, this court finds that petitioner was not substantially prejudiced by the failure to give such notice, and if it was prejudiced, that prejudice has been fully mitigated by the reduction in penalty made by the Forest Supervisor.

Petitioner was not prejudiced because at the time of the notice of the delayed on-date in November of 1994, there was an informal appeal mechanism discussed. The meeting notes of the November 30, 1994 meeting show:

> Chas Kane stated the delayed on-dates are not accepted by the permittees at this time. They will hold an Association meeting and then write the Forest Service a letter, most likely in January. Craig Yancey [the District Ranger] agreed that sending a letter would be appropriate.

(Rec.88).

On January 11, 1995, such a letter protesting, among other things, the 1995 on-date was signed by Chas Kane and several others and sent to the Forest Service. (Rec.155).

By letter dated February 6, 1995, the Forest Service responded to the protest letter with a letter sent to Chas Kane, as President of the BigHorn Cattleman's Association.

(Rec.91). This response directly addressed the permittees' concerns and protest about the delayed on-date. The response went over the range health data, explained the reason why one portion of the allotment would be subject to a traditional range readiness tour and why the delayed on-date would be necessary. The letter invited further questions and comments if the explanation was not sufficient.

Thus, by means of this informal appeal process the permittees made their position clear and the Forest Service addressed their concerns with a clear written explanation based upon available data. Thus, the court finds that Kane Land and Livestock was not prejudiced by the lack of formal notice of a right to appeal the delayed on-date.

This court also finds that one-year notice requirement of 36 C.F.R. 222, Subpart A, does not apply to the decision to delay the on-date. Subsection 8(b) of the grazing lease provides that the one year notice normally required does not apply to the subsection (c) determination. The court also notes that petitioner's position on this subject is contradictory. First it contends that decisions on forage can be made only at the beginning of the grazing season, and then it contends there has to be a one-year notice of such a decision.

*Issue 2(c)*—That the penalties imposed upon Kane by the Forest Service were unnecessarily severe since admittedly no damage was done to the resource.

 Kane contends that the penalty was too severe since admittedly no damage was done to the resource. Generally, this court defers to the agency's choice of remedies. *Diamond Ring Ranch, Inc. v. Morton*, 531 F.2d 1397 (10th Cir.1976).

The Forest Service regulations provide this penalty for a willful violation. Nonetheless, the Forest Service modified the penalty for the second and third years. If this court were to lessen the penalty it would encourage violations. Similarly, if this court were to hold that damage had to be proven before willful violations could be penalized, it would encourage violations because a permit holder would know that a deliberate violation would go unsanctioned unless actual damage to the resource could be proven. The fact that there was no actual damage was adequately taken into account in the imposition of the penalty.

Further, this court believes that it would be an insult to the other permit holders, each of whom abided by the delayed on-date in order to restore the range for the common good, to grant Kane Land and Livestock a special privilege to ignore without penalty a delayed on-date for damaged rangeland.

*Issue 2(d)*—That the decision to impose penalty conditions upon two allotments of Kane's permit was arbitrary and capricious.

 Kane Land and Livestock contends that the penalty should be imposed only on one of its two grazing allotments. The Forest Service contends that it is one single grazing permit and therefore the penalty must be imposed against both areas included in the single permit.

Review of the administrative record shows that there is a single permit and therefore the imposition of the penalty on the property covered by the permit was not arbitrary and capricious and is fully supported by the record.

*Issue 2(e)*—That under all the circumstances, the action of Kane did not constitute a willful violation and imposing a severe penalty was not justified, or was arbitrary and capricious.

 As noted above, Kane Land and Livestock was out of compliance with the terms and conditions of the permit in 1994. The delayed on-date and reasons for it were made clear the previous November. Kane Land and Livestock made use of an informal protest mechanism and the delayed on-date and the reasons for it were clearly reiterated. It paid for a 1995 period of use that started on July 6, yet it chose to move cattle onto the allotment prior to that date. Although it may have disagreed about the reason for the delayed on-date, Kane Land and Livestock chose to ignore the delayed on-date and it was the only one of the 12 permittees in the same boat who did so. The record certainly supports a finding of willful violation.

**Issue 3**—Whether the Deputy Regional Forester erred in not responding to Kane's request for a stay.

The regulations require that the "reviewing officer must rule on a stay request no later than 10 calendar days from receipt and must issue a written decision on a stay request." 36 C.F.R. § 251.91(e) and (g).

Kane Land and Livestock's request for a stay was made as part of its March 8, 1996 Notice of Appeal. The Deputy Regional Forester did not rule on Kane's request for a stay as part of his April 8, 1996 decision. Kane raised the issue of a stay again in a letter dated April 25, 1996. On May 10, 1996, the Regional Forester responded that further review was not possible as the April 8, 1996, decision was the final agency decision.

The Forest Service did not comply with the regulation requiring immediate written response to a request for a stay. However, petitioner later brought the issue of a stay to this court when it filed its Motion for a Temporary Restraining Order the same day as the complaint was filed, June 7, 1996.

■ Where the review received in this court was identical or broader than that which would have been received had the Forest Service considered the request for a stay, the procedural error they allege is harmless. *All Indian Pueblo Council v. U.S.*, 975 F.2d 1437, 1443 (10th cir.1992). However, where the Forest Service's decision was not arbitrary and capricious and is fully supported by the record, the fact that it did not follow its procedures with regard to the separate issue of a stay is not dispositive of this appeal.

## CONCLUSION

The court finds that the Forest Service's decision was within the scope of its authority, that it complied with necessary procedures or that the failure to comply with procedures was harmless error and that the decision was not arbitrary and capricious or an abuse of discretion. The imposition of the penalty is fully supported by the record on appeal.

The court will enter an order and judgment affirming the Forest Service and dismissing this appeal.